THOMAS PAPER STOCK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47185. Filed September 30, 1954.

*Richard Weinberger, Esq.*, for the petitioner.
*Andrew Kopperud, Jr., Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $3,103.99 in the income tax of the petitioner for 1950. The only issue for decision is whether the petitioner had a base period capital addi-

tion which would increase its excess profits credit based on income (section 435 (f) (1) and (2), Internal Revenue Code of 1939) where the earnings of the base period years merely reduced the deficit resulting from the excess of liabilities over assets at the beginning of each base period year. The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioner corporation was organized in 1927. It filed its excess profits tax return for 1950 with the collector of internal revenue for the first district of Illinois.

Section 435 (a) provides that the excess profits credit based on income shall include, in a case like this, in addition to 83 per centum of the average base period net income (not here in dispute), "12 per centum of the amount of the base period capital addition, computed under subsection (f)." The parties disagree as to that computation. The base period years for this purpose are the years 1948 and 1949. Subsection (f) (1) defines yearly base period capital "for any taxable year" as "the sum of the equity capital (as defined in section 437 (c)) at the beginning of such taxable year and an amount equal to 75 per centum of the daily borrowed capital * * * for the first day of such taxable year, reduced (but not below zero)[1] by the sum of" adjustments for inadmissible assets, certain loans, and interest on borrowed capital. The "Computation of Base Period Capital Addition" is set forth in section 435 (f) (2). It requires here the use of "the yearly base period capital" for 1950, 1949, and 1948. That for 1950 is agreed to be "none." The Commissioner has held that that for each of the other 2 years is likewise "none" instead of the minus amounts contended for by the petitioner, as set forth later. This difference stems from their disagreement as to whether a minus amount may or may not be considered "equity capital" in computing capital additions. The Commissioner contends that there can be no equity capital and no base period capital when the computations of those factors result in minus amounts and the mere reduction of deficits (excess of liabilities over assets) by retained earnings does not represent a capital addition within the intended meaning of that term since there is still no excess of assets over liabilities to create "equity capital" and also, here, no "base period capital." Section 437 (c) defines equity capital as of any time to "be the total of its assets held at such time in good faith for the purposes of the business, reduced by the total of its liabilities at such time."

The Commissioner, in determining the deficiency, held that the petitioner had no base period capital addition for 1950 under section 435 of the Internal Revenue Code of 1939. His method of computation was as follows:

---

[1] This parenthetical provision is the 1951 "clarifying" amendment to which the petitioner refers in its "points" upon which it relies.

*Base Period Capital Additions*

| | Jan. 1, 1950 | Jan. 1, 1949 | Jan. 1, 1948 |
|---|---|---|---|
| 1. Total assets at beginning of year | $2,476,649.50 | $2,404,013.58 | $2,062,394.62 |
| 2. Total liabilities at beginning of year | 2,077,191.65 | 2,646,805.58 | 2,401,677.60 |
| 3. Equity capital at beginning of year (line 1 minus line 2) | 399,457.85 | (242,792.00) | (339,282.98) |
| 4. 75 percent of borrowed capital at beginning of year | 48,850.00 | 90,000.00 | 150,000.00 |
| 5. Total of lines 3 and 4 | 448,207.85 | None | None |
| 6. Adjustment for interest on borrowed capital | 10,833.33 | | |
| 7. 75 percent of line 6 | 8,125.00 | | |
| 8. Inadmissible assets held at beginning of year reduced by 25 percent of the excess, if any, of the inadmissible assets over the amount on line 3 | 1,062,710.58 | | |
| 9. 75 percent of loans to members of controlled groups at beginning of taxable year | None | | |
| 10. Totals line 7, 8 and 9 | 1,070,835.68 | | |
| 11. Yearly base period capital (line 5 minus line 10) | None | None | None |
| 12. Excess, if any, column 1, line 11 over higher of: (a) Column 2, line 11; or (b) Column 3, line 11 | | | None |
| 13. 50 percent of excess, if any, of (a) Column 1, line 11, or (b) Column 2, line 11 whichever is lesser, over Column 3, line 11 | | | None |
| 14. Base period capital additions (sum of lines 12 and 13) | | | None |
| 15. 13 percent of line 14 | | | None |
| Correct base period capital as above | | | None |
| Base period credit based on income per return | | | 472,463.24 |
| Corrected excess profits credit | | | $472,463.24 |

The parties agree that all items under "1/1/50" in the above computation are correct as are items 1, 2, and 4 in the other two columns.

The petitioner states, under the points upon which it relies, that equity capital as used in section 435(f)(1) can be a minus figure, the 1951 amendment to that section, adding parenthetically "(but not below zero)," did not change that or prevent the taxpayer's "base period capital" from being a minus figure resulting from causes other than the inadmissible asset adjustment, but the Commissioner erred in construing the amendment to preclude a minus figure. The Commissioner does not rely upon the 1951 amendment.

The petitioner has incorporated in its brief a computation showing, as the only difference between the excess profits credit allowed and that claimed, an addition of $20,524.56, representing 12 per cent of alleged "Base period capital additions" totaling $171,037.49. The latter figure is the sum of $152,792 and $18,245.49. The $152,792 (a minus figure) originates as the excess of liabilities over assets at 1/1/49 plus (i. e., reduced by) $90,000, 75 per cent of borrowed capital at that same date. A minus figure of $189,282.98 is similarly arrived at for 1/1/48; from it is subtracted the $152,792; and one-half of the difference of $36,490.98, or $18,245.49, is regarded as a part of the base period capital addition. The Commissioner does not question any of the figures used by the petitioner in the computation.

The petitioner's theory seems to be that the excess of liabilities over assets, a deficit, reduced by 75 per cent of borrowed capital at the beginning of 1949 and 1948, represents yearly base period capital for those years; both are already below zero and may not be further reduced by inadmissible assets, which in each year exceeded $944,096, or by 75 per cent of the adjustment for interest on borrowed capital; the base period capital at 1/1/50 is conceded to be zero; and all of the 1949 minus amount and 50 per cent of the excess of the 1948 minus amount over the 1949 minus amount represent base period capital additions (reductions of minus amounts), computed under section 435(f)(2). It thus would avoid the disadvantageous adjustments for inadmissible assets and interest on borrowed capital in computing capital additions. It says the retained earnings "increased equity capital during the base period," although the increased amount was still less than zero.

The Commissioner is right in holding that Congress, in using the terms "equity capital" and "base period capital," had in mind actual capital as opposed to deficits or minus quantities and did not intend to give credit for a reduction in minus quantities or for nonexistent capital. See Regs. 130, sec. 40.435-6 (a) (2). A corporation which had equity capital of $1 on 1/1/48, $96,490.98 on 1/1/49, and $642,249.85 on 1/1/50, but otherwise was like the petitioner would be entitled to no base period capital addition although the amount of its earnings for 1948 and 1949 would be equal to those of the petitioner. It is unreasonable to suppose that Congress intended a deficit corporation to have a credit for base period capital additions where a corporation whose assets exceeded its liabilities would receive no such credit although the earnings left in the business by each were identical in amount.[2] Ordinary common sense should justify this conclusion and the petitioner points to nothing in the act or its legislative history which indicates a contrary intention upon the part of Congress. The fact that Congress did not expressly state that where the computation of either item resulted in a minus figure it should not be used in computing base period capital additions is not significant since only positive amounts would normally be considered as existing capital of a business.

*Decision will be entered for the respondent.*

---

[2] Another example of an absurd and inequitable result under the petitioner's theory is: If the petitioner's equity capital for 1/1/48 had been $1 and a considerably larger amount of earnings had been retained than was actually retained in this case, the capital addition under the petitioner's theory would be less than it is contending for here.